all right we're happy to hear argument in our second case East Coast Repair versus USA number 20 2146 good afternoon if it pleases the court I'm Dustin Paul from Van Diemen or black on behalf of East Coast Repair and Fabrication we come before the court for a reversal of the district courts entry of summary judgment and reversal of the district courts finding of a lack of subject matter jurisdiction this case focuses on the repair contract to a Navy vessel the USS Hurricane in which my client East Coast Repair has never been paid the full contract balance for the work that it did on that vessel and so it filed its suit in the Eastern District of Virginia consistent with the Contract Disputes Act seeking the unpaid balance on the contract its claims before the court were quite simple it had a fixed price contract with the Navy it performed as it was required to under the contract and yet it had not been paid the full balance that was due under the contract based upon that it issued its final invoice for nearly half a million dollars and the Navy refused to pay it that resulted in the suit that was filed in Norfolk the claims are quite straightforward and we believe in fact summary judgment should be entered on behalf of each East Coast Repair because the Navy and the government have never contested the underlying facts that support the claim in this case the existence of the contract the performance of the contract and the failure to pay under the contract unfortunately the district court went off in two directions that simply should not have resulted in summary judgment the first one we have to address is the threshold matters the subject matter jurisdiction issue but the court ruled on the district court ruled that it lacked subject matter jurisdiction to hear this claim because of the election doctrine a doctrine that arises under the Contracts Dispute Act the election doctrine is relatively straightforward as far as government contracting matters go it requires that a party seeking to enforce a government contract elect one and only one jurisdiction to have a particular issue heard so it can choose for a maritime contract like this to be heard in the Navy it can be heard before the Armed Services Board in this case East Coast has only elected to have these matters heard before the district court nevertheless the district court concluded to the opposite finding that East Coast had in fact elected to have these issues heard before the Armed Services Board but that is a legal matter and a factual matter is simply incorrect there was never a complaint or a notice of appeal on these issues that was filed before the Armed Services Board instead what the government seeks to rely upon is an erroneously filed motion for summary judgment before the board a motion for summary judgment however is not an election under the election doctrine it is only the filing of a complaint or a notice of appeal on an issue that makes a binding election the rules in front of the board are no different than the rules before every district court throughout this country it is the complaint that frames the claims that are before the court and in fact if we look at board rule 60 a matter that's not in the pleadings cannot be heard by the court unless there's agreement between the parties and no one has alleged that here just like in a normal civil suit before a district court matters raised in a motion for summary judgment certainly here when that motion was erroneously filed cannot somehow expand the issues that are before the court have there never been an actual election to proceed before the board the district court here had subject matter jurisdiction to hear the claim it's also important to note that the district court in this case never made any factual findings that would support a conclusion that the Armed Services Board had jurisdiction to hear a claim even if it had been proper mr. mr. Paul if I could ask you I thought I understood part of your argument on the that the Navy had represented as a matter of fact that the liquidation the liquidated damages claim was not presented before the board indeed your honor they represented that both to the board and to the district court at separate instances that this matter of the liquidated damages had never been before the board so is it part of your argument that as a factual matter that that simply was never present and therefore there wasn't a basis for the district court to rule on or what's what is your argument well I think there's a number of arguments the first one is that they've never been an election made if there's ever been an election made the election doctrine can apply the second one is that even if there is an election made that election only becomes binding upon a finding that the board or the court which whichever one was the forum selected actually has jurisdiction to hear the claim that finding has never been made in this case it was never made by the board because everybody told the board that these issues were never before the board and it wasn't found by the district court here okay mr. Paul let's just say you're right on that why don't you have a problem arising from the settlement agreement in the tempest case because in the tempest litigation and I'm referring you particularly today a 257 page 5 of the complaint in the tempest litigation you said that the liquidated damages of four hundred seventy four thousand were part of the tempest contract that they're including those liquidated damages as part of the calculation of damages requested here under because they were assessed on the template and then when you settle in agreement and that's the j85 settlement agreement you agreed to settle any claims arising out of or in any way relating to the tempest contract so why doesn't that in the case here you in your own litigation under the tempest lawsuit said these liquidated damages are damages arising from tempest and then in settling the tempest lawsuit you said we're giving up any claims that arising from or could have arisen from the tempest contract so why doesn't that in the matter your honor I think it goes to the actual language that's within the settlement agreement on page 85 and page 86 so there is no reference in either of those sections to the hurricane case there's no references to the hurricane contract and in fact I think when they're talking about the contract they're talking about the tempest contract that was a lawsuit they're selling that that's exactly right they settled that the tempest contract but they didn't settle the hurricane contract right and they said that they were yeah but you pleaded in the tempest litigation that these were damages that were part of the tempest contract because they were assessed on the tempest you said that on an appendix 257 so how do you how do you get away from your own language in the complaint but I think we do that by the actual language of the settlement agreement and what I would note in particular is that the settlement agreement release of claims differentiated specifically between matters that arose in the tempest litigation which is what the government was releasing and claims which arose under the tempest contract I think here it's important to apply what I would consider a but for test but for the existence of the tempest contract the claims of East Coast would be exactly the same we have a lump-sum contract we did the work we perform the work we want to be paid for the only way that the tempest issues really arise in the suit is as an affirmative defense raised by the government in this case that's an affirmative defense they no longer have because they've clearly released in the settlement agreement anything related to the tempest filings but here there's a distinction between claims arising under the hurricane contract and claims arising of the tempest contract what we've asserted in this place are clearly claims arising under the hurricane contract and I think when you compare the language of paragraph 2 and paragraph 3 of the settlement agreement that distinction makes it is clear and I think what's important to note is throughout all of the briefing both at the district court and here before this court there's only been one suggested interpretation of those two paragraphs that make any sense why did the parties not agree to mirror image releases and you don't reason is me there's no evidence in this record from anybody who knew anything about signing these releases that this was intended right well what we do know from the question then you can go on that's correct either party put any parole evidence both parties think the contract speaks for itself right and here it does we've got controlling for circuit precedent which says that when different terms are used if there's any possible interpretation in which in which this different meanings can be attributed then that's what should be done and I point the court to hunter versus versus the town of mr. mr. I'm not sure it's question and look at this language on 257 yeah 257 of the Joint Appendix to follow that point up mr. Paul why doesn't that paragraph 23 on page 257 make the liquidated damages I think this is judge Kenan's question part of the because of the traditional rules regarding setoffs and affirmative defenses right to be clear East Coast was within the suit trying to be clear that no money should have been taken away from the hurricane contract we had what was being litigated here in the underlying tempest suit was whose responsibility it was for the late delivery of the tempest and a natural consequence of that was whether or not liquidated damages could be assessed but was not being adjudicated was what the actual contract balance was on the hurricane contract and the right to collect under the hurricane contract here we've gotten focused from the actual claims that East Coast is making which is for payment of the hurricane contracts to a potential defense that the Navy could raise which is a setoff but for purposes of East Coast claims the tempest has nothing to do with our claims arise out of a contract where we were promised that we would be paid a specific amount of money for doing specific work we've never been paid that money we've asked for that money to be paid if the Navy wants to sort of set off and again we don't think they can because we think they've waived any right to set off they can try that in the hurricane case but we're talking about two separate contracts and the fact that the Navy unilaterally decided to assert a setoff doesn't make one contract related to or arising out of another contract well and I understand excuse me I think that the Navy's argument is that you all settled this and I understand your argument that there is some difference in the language of the settlement agreement entered into by the two parties but we don't know the significance of that because we don't have anybody who signed on to the release talking about it so we have to draw our own conclusions about this and this discussion on page 257 helps us to do that I you know there's no dispute that in the Tempest litigation reference was made to these liquidated damages when I certainly it's on the page in front of you I think we all agree that that reference was made in the underlying suit but I think it's also telling that the word hurricane doesn't show up anywhere in the contract my client came in and signed an agreement to settle me it doesn't show up anywhere in the contract because it was the settlement of the Tempest litigation right right it was intended to settle the Tempest litigation not any issues regarding the hurricane my client continues to view these as separate contracts and if the Navy wanted a release of the claims on the hurricane contract it had to seek and have my client agree to release those claims what is your response to the observation that the district court made that there was retainage expressly put into the terms of the contract and there was no retainage with respect to this but you're on the reference to retain age is a specific contract term contract reservation for the retainage and there's needed to be a reservation for the retainers in the contract because it was releasing all the claims that were rising out of the Tempest there was no reservation of rights regarding the retainage on the hurricane contract it wasn't a reference at all to the hurricane contract because the parties weren't intending to settle issues regarding the hurricane the issues that were being settled were only those arising out of a related to the Tempest contract and again I caution the court and we address this briefly with a before the court to interpret the rules differently to determine that a rising out of a related to one contract can mean a separate contract will have significant implications in the arbitration context and really any other context in which we see that term used because here if you believe the Navy's position their unilateral right to assert a set off versus those contracts together and so the language of arising out of related to one contract now actually refers to a separate contract and that is a a problematic rule going forward for those of us who try to draft contracts specifically arbitration contracts which almost always refer to claims relating to or rising out of a contract um mr. Paul has the Federal Circuit tried to clarify this by saying that a claim to a set off attaches to the underlying contract isn't there some case law from the Federal Circuit trying to clarify that point if you're making a claim I'm not sure your honor what what cases you're referring to mm-hmm okay I can't address that okay thank you thank you very much good afternoon your honor may it please the court I'm Mike DeLauro on behalf of the United States opposing counsel just said that the Navy never contested the underlying facts that's simply incorrect the the facts were contested when the court ever ruled on those facts because the case was settled but it's not as if we've ever agreed that the lateness of the redelivery was the Navy's fault or responsibility as opposed to East Coast's the Navy's position steadfastly has been that the tempest came back 84 days late and that it was entitled to this 400 and I'll just call it four hundred and seventy four thousand dollars worth of damages but the focus isn't on the hurricane contract it's on the tempest contract because the tempest contract was the basis for the set off and and there's a sizable body of a very straightforward law which starts with that Supreme Court Muncie decision and and carries forward in the Federal Circuit and the courts of federal claims cases which says the government doesn't Mr. DeLauro that all goes to the merits and we want to hear the merits but there's a threshold issue of jurisdiction so is the Navy's position still that the district court was correct that there was no subject matter jurisdiction here the briefing that the government submitted wasn't consistent with the court's decision fully throughout the briefing it's very clear that the first election wasn't in the ASBCA the first election was in the first tempest case on and and we're talking about page 257 in the appendix it's that paragraph 23 of the complaint in the earlier case that was the initial election that brought this issue to a tribunal it was then injected a second time with the filing of the motion and now we have it a third time in this case so our position would be that the election doctrine applies either going from the district court to the ASBCA or from the ASBCA to this well to the that's one thought another your honor is that East Coast keeps reframing this issue as being all about the hurricane contract and the point really is well okay we don't agree it's really not about the hurricane contract but let's hold that thought for a second if it is then this issue should have been pursued in the ASBCA because it was introduced there what we have really is a case of I don't know I guess it would probably qualify for what the Supreme Court calls drive so you're gonna tell us event you're gonna tell us whether we have subject matter jurisdiction or not at some point yes your honor this court has jurisdiction is derivative of the district courts and the district court had the power to hear the case before it under the suits and Admiralty Act and public vessels act as modified by the Contract Disputes Act and this court's jurisdiction is derivative of the district courts well so was there the district court didn't really have a choice because you're saying that the it was the only place that had jurisdiction is that what you're saying I'm sorry that agency also had jurisdiction both of them had jurisdiction I'm just not sure you're I'm not trying to your argument yet no your honor I think I understand the question let me let me try so the contractor has a choice at the outset forget that we've been to the ASBCA in the district court let's just go back to the beginning the contractor can either in this case because it's a military contract they can file a claim with the ASBCA which is what they did in hurricane or or they could go to the court of federal claims except that this is a maritime contract and there's this exception to the CDA which puts such cases in the district court but having picked the district court when it filed that complaint in December 2014 we submit that that's the first election nonetheless we have this conundrum that's created by the filing in the ASBCA yes but your contention before us is that the district court had jurisdiction and indeed it was the only place that had jurisdiction over this case isn't that right yeah that's right your honor and it's spelled out not in a given case but it's this case spelled out because they elected it to begin with yes your honor yes your honor and that actually if I if I could make a point that the courts not asking about that's the difficulty that we have with that footnote finding about judicial estoppel right in other words in other words when we filed the briefing we had no way to know whether the district court was going to find the case whether it was going to focus on the first tempest case or on the ASBCA filing we had no way to know that and as it turned out I mean what I thought I was going to see was that the the first filing was in the the district court the first time and instead the it looked like the district court didn't really question the ASBCA's jurisdiction which I understand and that was a question in our minds because here the district court it's not acting as an appellant body vis-a-vis the ASBCA that's a concomitant court to which it owes some measure of comedy so the district court is put in a position where it's sort of being asked to make findings on a very sparse record in the ASBCA and it's not surprising that that judge Wright didn't get into the issue okay but anyway the straight district I'm sorry but on that point isn't there a pretty well established body of law that we relied on not too very long ago that if you have a difficult jurisdictional question and you have some preliminary issue like for example the one at issue here which is race to Dakota collateral estoppel you can go directly to the race to Dakota collateral estoppel issue and not worry about jurisdiction bring court has said that not with respect to race Judah but with respect to preliminary arguments isn't that right yes absolutely your honor and so what we have to determine whether there was jurisdiction or not we could if we decided that the race to Dakota collateral estoppel issue was easier to decide we could go directly there yet yes your honor and to my appreciation what we're seeing is a relaxation of the Supreme Court's steel company case yeah in in subsequent cases and so if you have a very what we have here is a very straightforward grounds on race to Dakota and this this election doctrine is definitely in the mix but it's a much more esoteric issue yeah so one thing I'd like to also take issue with in defense the set-off as a defense set-off is not a defense it's an affirmative right and it's an affirmative right that was fully executed before they ever filed their first complaint in other words if one looks at the sequence of events there were two or three letters between the contracting officer and East Coast and then East Coast filed a request for equitable adjustment notifying that the contracting off notifying the that it took issue with the government's position the Navy's position and then we had a deemed denial the the Navy didn't the Navy was working on it but didn't quite get the response out and so moving forward on this deemed denial East Coast brought the lawsuit in December of 2014 at the time that lawsuit was brought the government didn't file a counterclaim it didn't assert set-off sort of as a defense the set-off was done the the reason we see the the count in the complaint which seeks reversal of a settle the reason we see that in the record at 257 paragraph 23 is because at that point it's East Coast's claim and in fact there's even language I believe in Muncie to the effect of a party can't jump back and forth back and forth in time and that's kind of what's going on here the East Coast wants to say well it's a defense and the government waived it it's not a defense it's done when they filed their lawsuit so but crucial to your race judicata argument of course is the relief and so maybe and your colleague makes an argument that okay language is different and under Fourth Circuit law we have to differences so I know you don't know how you happen to get different language it's very odd to me but maybe you can address the releases yes your honor I mean in so far as we can tell the the language is simply an artifact from an earlier release in some other case parties put together a release there was no you know detailed back and forth that focused on this 473,000 and most assuredly office did not have the Treasury write a check for two and a half million dollars with the thought that probably we come back and litigate all over about another 500,000 but I would suggest this I'm not sure that this framing is fair this framing where we look at well here's the government's release and here's East Coast release the government's release doesn't matter because the government doesn't have a counterclaim in the first lawsuit the only language that's important is in East Coast's release and Judge Wright hits the nail on the head when she focuses on that I think it's a rising under something like that that that's that's the whole case right there your honor it's the race judicata issue well mr. Mr. Delario let me answer this if if you if if East Coast had not included paragraph 23 and its complaint in the tempest litigation would that change your argument here I'm not sure that it would your honor because in other words East Coast has a very broad release they're releasing any any matters known or unknown suspected or unsuspected foreseen or unforeseen open or hidden it's very very broad language and I would suggest to you that but all the tempest contract that out of the tempest contract and arguably East Coast may have pleaded themselves out of relief through that paragraph because arguably they made the liquidated damages claim in the tempest part of the tempest contract by reason of their own pleading it may be a moot point but it to me that that's a crucial prong of your argument well I I don't I mean I appreciate the court's point but I'm not sure I fully agree and here's why the law really doesn't smile upon claim splitting this entire first tempest lawsuit was about problems a variety of well what East Coast saw as problems with the tempest contract that issue if it wasn't in that complaint I think we would argue had been waived in any event as you say your honor it is perhaps a if there are no further questions from the court I would relinquish the balance of my time thank you very much thank you unless at least have questions no thank you very much we appreciate your thank thank you very much for your time if I could so I think I'd like to start by addressing the question of whether the setoff is an affirmative defense or not we address that issue in the blue brief on page 20 citing two Fourth Circuit cases both of which hold that a setoff is an affirmative defense so this notion that East Coast is somehow trying to the suit filed in this case is under the hurricane contract it's a breach of contract claim and the elements in no way rely upon anything having to do with the tempest contract what is being asserted here by the Navy is an affirmative defense it's a setoff and that issue has to be asserted by the Navy as a defense it doesn't somehow undermine East Coast case just because it exists I understand that the court is focused on that footnote in that paragraph in the first tempest suit which does reference the fact that liquidated damages were held but I think all that really does is reinforce the importance of the language of the settlement agreement where the parties have different language to address their releases and one of them addresses everything that was raised in the pleadings and that was what the the Navy was giving up and if that language had been included in the release for East instead of comparing the two releases maybe you can tell us what language in the release leaves your in your release leaves claim alive well respectfully your honor I think that flips the question I'm not interested because you're the only person what was the Navy releasing what was the Navy releasing any other claims that have had it on the related to the tempest well we didn't know what we don't know what claims the Navy could have or could not have asserted on the tip so what my client was seeking well humor me for a moment and assume that you were the only person that's releasing anything because the only thing that we have involved here is the claim that you did or did not release that's the only thing that's issue in this case that's correct okay so where is it that you reserved this argument it was reserved by by limiting the reverse to only those issues which are arising out of or related to the tempest contract okay I mean the release was intended to put to bed the tempest contract to have that contract done and put to the side so my client could move on to the issues regarding the hurricane contract and that's exactly what we've done we're not here suing on the tempest contract the Navy is the one that agreed that it could no longer assert any liquidated damages it paid my client 2.5 million dollars on the tempest contract because the delivery wasn't the fault of my client was the fault of the Navy and that's the reason the money flew it and in that direction ultimately this comes down to what is the claim before the district court the claim before the district court is a breach of contract on the hurricane contract there is no defense to those claims the Navy agreed to pay a set amount of money my client performed the contract and they weren't paid and the only way to avoid the clear breach of contract is if the Navy has an affirmative defense and other than set off which they clearly waived in the settlement agreement they don't have any other affirmative defense explaining why they did not pay under the hurricane contract so what we'd ask this court to do is to reverse the lower court both on the subject matter determination and on the underlying merits of the case and instead award summary judgment to my client East Coast Repair who just wants the balance that's left on this hurricane contract. With that I'll yield my time back. Thank you very much we appreciate your arguments and we will take the case under submission and I think we're do we want to take a short break? Short recess please. Thank you short recess and then we'll go to our third case. Thank you very much. Thank you. This honorable court will take a brief recess before hearing the next case.
judges: Diana Gribbon Motz, G. Steven Agee, Barbara Milano Keenan